UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM H. GREATHOUSE, )<br>)<br>*Plaintiff*, )<br>)<br>*vs.* )<br>)<br>CAROLYN W. COLVIN, *Acting Commissioner of* )<br>*the Social Security Administration*, )<br>)<br>*Defendant*. ) | No. 1:14-cv-00805-JMS-DKL |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff William Greathouse protectively applied for disability and disability insurance on May 13, 2011, and for supplemental security income on May 23, 2011, from the Social Security Administration ("SSA"), alleging a disability onset date of July 26, 2010. His applications were denied on August 3, 2011, and denied again after reconsideration on September 22, 2011. A hearing was held on October 29, 2012 in front of Administrative Law Judge Albert J. Velasquez (the "ALJ"), who subsequently determined that Mr. Greathouse was not entitled to receive benefits. [Filing No. 12-2 at 25-35.] The Appeals Council denied review, [Filing No. 12-2 at 8-10], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Mr. Greathouse has filed this civil action pursuant to 42 U.S.C. § 405(g), asking the Court to review his denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Mr. Greathouse was forty-two years old as of his alleged onset date. [Filing No. 12-5 at 2.] Previously, he had worked as a janitor and a production line worker at a factory. [Filing No.

1

12-2 at 43-44.] Mr. Greathouse claims he has been disabled since July 26, 2010. [Filing No. 12-5 at 2.]

Using the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520, the ALJ issued an opinion on November 14, 2012. [Filing No. 12-2 at 25-35.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Greathouse had not engaged in substantial gainful activity[1] since the alleged disability onset date. [Filing No. 12-2 at 27.]

- At Step Two, the ALJ found that Mr. Greathouse suffered from the severe impairments of morbid obesity, degenerative disc disease with stenosis, coronary artery disease with stent, and hypertension. [Filing No. 12-2 at 27-28.]

- At Step Three, the ALJ found that Mr. Greathouse did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. [Filing No. 12-2 at 28.] The ALJ concluded that Mr. Greathouse had the residual functional capacity ("RFC") to "lift and carry 20 pounds occasionally [and] 10 pounds frequently. The claimant is able to stand and walk for 2 of 8 hours and sit for 6 of 8 hours. The work should require no more than occasional climbing of stairs and ramps and no climbing of ropes, ladders, or scaffolds and no more than occasional balancing, stooping, crouching, no

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a) and § 416.972(a).

2

>     kneeling or crawling provided the work allows the individual to alternate between a sitting or standing position for 1-2 minutes per hour. No overhead reaching. The claimant should avoid work at unprotected heights, around dangerous moving machinery, operating a motor vehicle, working around open flames, or large bodies of water. The work environment should avoid concentrated exposures to noxious fumes, gases, respiratory irritants, and extremes of temperature and humidity." [Filing No. 12-2 at 29-33.]
> 
> - At Step Four, the ALJ found that Mr. Greathouse was not able to perform his past relevant work. [Filing No. 12-2 at 33.]
> - At Step Five, the ALJ found that considering Mr. Greathouse's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. Specifically, the ALJ found Mr. Greathouse would be capable of working as an assembler, handpackager, or inspector. [Filing No. 12-2 at 33-34.]

Based on these findings, the ALJ concluded that Mr. Greathouse was not disabled and was not entitled to disability benefits or supplemental security income. [Filing No. 12-2 at 34-35.] Mr. Greathouse requested that the Appeals Council review the ALJ's decision, but the Council denied that request on February 18, 2014. [Filing No. 12-2 at 8-10.] That decision is the final decision of the Commissioner for purposes of judicial review, and Mr. Greathouse subsequently sought relief from this Court. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381

F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating all limitations that arise from medically determinable impairments, even those that are not severe. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ may not dismiss a line of evidence contrary to the ruling. *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The

4

burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Mr. Greathouse raises two arguments on appeal: (1) that the ALJ's credibility analysis is flawed, [Filing No. 14 at 14-16]; and (2) that the ALJ should have given more weight to the opinion of Mr. Greathouse's treating physician, Dr. Philip Pryor, [Filing No. 14 at 16-21]. The Court considers each argument in turn.

### A. Credibility Analysis

Mr. Greathouse argues that the ALJ improperly found that he was not credible because the ALJ did not acknowledge the opinion of the State Agency medical expert, Dr. Brill, which found him to be credible. [Filing No. 14 at 14.] Specifically, Mr. Greathouse points to Dr. Brill's statement that "[t]he claimant's statements about his symptoms and their functional effects are fully credible." [Filing No. 14 at 14.] Mr. Greathouse contends that the ALJ stated he "essentially adopted" Dr. Brill's opinion, but then did not mention Dr. Brill's credibility finding. [Filing No. 14 at 15.] Mr. Greathouse argues that "[i]f the ALJ does disagree with this portion of [Dr. Brill's] opinion, he has to state why he finds this part of the assessment unconvincing but finds the rest of the assessment so persuasive." [Filing No. 14 at 15-16.]

5

The Commissioner responds that Dr. Brill's credibility statement "bleeds into the standard language from section II of the functional capacity form completed by state agency physicians, and is not at all obvious from even a careful reading of the form." [Filing No. 17 at 7.] The Commissioner also notes that Dr. Brill did not evaluate any of the statements Mr. Greathouse made at his hearing with the ALJ, because Dr. Brill's report was from August 2011 and the hearing was in October 2012. [Filing No. 17 at 7-8.] The Commissioner argues that Dr. Brill also found Mr. Greathouse to be capable of light work, which is much more demanding than the limited range of sedentary work the ALJ found him to be capable of performing. [Filing No. 17 at 8.] The Commissioner states "a reasonable reading of the reviewing physicians' opinions is that they found Plaintiff was credibly reporting his symptoms, but that those symptoms did not prevent him from performing the full-range of light work activity." [Filing No. 17 at 8.]

The party who "seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (citations omitted). Because "the ALJ is in the best position to determine a witness's truthfulness and forthrightness[,]" the Court "will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotations omitted) (citations omitted); *see also Prochaska*, 454 F.3d at 738 (quotations omitted) ("We afford a credibility finding considerable deference, and overturn only if [it is] patently wrong.").

"To evaluate credibility, an ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (referencing SSR 96-7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities,

allegations of pain, aggravating factors, types of treatment received and medication taken, and functional limitations." *Simila*, 573 F.3d at 517.

Mr. Greathouse focuses his credibility argument solely on the following statement by the State Agency Physician, Dr. Brill:

> Careful consideration has been given to the claimant's statements regarding alleged symptoms and their effect on functioning. The claimant's MDI could be expected to produce the alleged symptoms and the allegations are not inconsistent with objective findings in the record. The credibility of these statements is further supported by the general consistency of the claimant's description of his symptoms within progress notes and other medical evidence. The claimant's statements about his symptoms and their functional effects are fully credible.

[Filing No. 12-8 at 133.]

The ALJ did not specifically discuss this language in his opinion, although he did consider Dr. Brill's opinion and noted that Dr. Brill "opined on August 2, 2011 that the claimant could perform work at light exertion" with some limitations. [Filing No. 12-2 at 33.] The ALJ noted that he "essentially adopted" Dr. Brill's opinion, as affirmed by another State Agency Physician, Dr. J.V. Corcoran, but took "additional work-related restrictions stemming from the claimant's impairments into account." [Filing No. 12-2 at 33.]

This Court defers to the ALJ's adverse credibility determination unless it is patently wrong. *Shideler*, 688 F.3d at 310-11. The Court does not find the ALJ's failure to address Dr. Brill's comment regarding Mr. Greathouse's credibility to be problematic. First, the ALJ provided an extensive discussion of the medical evidence, and of why he did not find Mr. Greathouse's statements regarding the limiting effects of his symptoms credible. [Filing No. 12-2 at 30-33.] This discussion included reference to statements Mr. Greathouse made at the hearing, which took place long after Dr. Brill examined Mr. Greathouse. These statements included Mr. Greathouse's testimony that he exercises at the YMCA five times a week, lifts weights for two hours, rides a

7

bike for 5-6 miles, spends three hours at the gym, and uses a hot tub/sweat room after his workouts to relieve back pain. [Filing No. 12-2 at 32-33.]

Additionally, Dr. Brill's finding regarding Mr. Greathouse's statements about his "symptoms and their functional effects" being credible merely means that Dr. Brill believed Mr. Greathouse when he said that his symptoms prevented him from undertaking certain activities. His finding does not imply that Dr. Brill believed Mr. Greathouse could not work at all. Indeed, and significantly, Dr. Brill ultimately found Mr. Greathouse to be capable of working with *fewer* limitations than the ALJ ultimately found. [*See* Filing No. 12-8 at 129-132.]

Mr. Greathouse seizes on one statement by Dr. Brill, but fails to address how the ALJ's discussion of that statement would have changed the ultimate conclusion given that Dr. Brill also found Mr. Greathouse capable of performing a higher level of work than the ALJ ultimately found. Accordingly, the Court concludes that the ALJ's adverse credibility determination was not patently wrong, and affirms the Commissioner's decision on that issue.

### B. Weight Given to Treating Physician

Mr. Greathouse argues that the ALJ did not give enough weight to the opinion of Dr. Pryor, his treating physician. [Filing No. 14 at 16-21.] Mr. Greathouse notes that Dr. Pryor found him to be disabled and unable to work and that, since the ALJ did not give that opinion controlling weight, he was required to consider the factors in 20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c). [Filing No. 14 at 17-18.] Mr. Greathouse asserts that it was not enough for the ALJ to state that Dr. Pryor "relied quite heavily on the subjective report of symptoms and limitations provided by the claimant," and that Dr. Pryor's opinion "is not well supported by medically acceptable clinical findings and laboratory diagnostic techniques." [Filing No. 14 at 18 (quoting Filing No. 12-2 at 31).] Mr. Greathouse details his medical records related to visits with Dr. Pryor,

8

and states that "Dr. Pryor was [his] treating physician and had access to his MRI and x-rays, both of which showed severe back issues….[T]he ALJ's reasons for giving Dr. Pryor's opinion little weight are based on an unsubstantiated assumption and not valid." [Filing No. 14 at 20.]

The Commissioner responds that Dr. Pryor's opinion that Mr. Greathouse was disabled and unable to work was, as the ALJ noted, conclusory and improper because "the ultimate issue of disability is reserved to the Commissioner." [Filing No. 17 at 6.] Since Dr. Pryor provided a "vocational rather than a medical opinion," the Commissioner argues, the ALJ did not have to following the "treating physician rule" when evaluating his opinion. [Filing No. 17 at 6.] The Commissioner notes that the ALJ discussed other medical records from different physicians, which indicated that Mr. Greathouse's examinations were normal. [Filing No. 17 at 6-7.] The Commissioner also contends that Dr. Pryor's findings in connection with Mr. Greathouse's MRI did not "shed as much light on [Mr. Greathouse's] condition as the detailed clinical examination findings, which, in this case, were normal from September 2010 through mid-2012." [Filing No. 17 at 7.]

"[A] treating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002) (citing *Clifford*, 227 F.3d at 870). Accordingly, the ALJ is permitted to consider inconsistency as a factor when determining how much weight to accord a medical opinion. SSR 06-03p (permissible to consider "[h]ow consistent the medical opinion is with the record as a whole"); *see also* SSR 96-2p ("Even if a treating source's medical opinion is well-supported, controlling weight may not be given to the opinion unless it also is 'not inconsistent' with the other substantial evidence in the case record"). The ALJ is not bound to accept any medical opinion evidence as conclusory, as the ultimate issue of disability rests with the

9

Commissioner. [20 C.F.R. § 416.927(e)](#); [*Johansen*, 314 F.3d at 288](#) ("Dr. Olsen's opinion that Johansen was 'unable to work…' is not conclusive on the ultimate issue of disability, which is reserved to the Commissioner").

Here, the ALJ explained that Dr. Pryor's statement that Mr. Greathouse is disabled and unable to work is an administrative finding reserved for the Commissioner. [[Filing No. 12-2 at 31](#).] That is, in fact, correct, and the ALJ is not bound by that conclusion nor is he obligated to reach that same conclusion. [*Johansen*, 314 F.3d at 288](#).

Mr. Greathouse also lists several of Dr. Pryor's findings, including that:

- In August 2010, Dr. Pryor examined Mr. Greathouse and found that he was "tender at L4 to S1 in the left sciatic notch and the reflexes in his back were decreased," and stated that he had reviewed Mr. Greathouse's x-rays and MRI which led him to diagnose "significant degenerative disc disease with severe spinal stenosis";

- Later in August 2010, Dr. Pryor examined Mr. Greathouse and found that his back was tender "with very poor range of motion and extension was only 10 degrees and painful," "[h]e had very tight hamstrings, his gait was antalgic and he was noted to be obese"; and

- In June 2011, Dr. Pryor noted that he had reviewed Mr. Greathouse's MRI and x-rays and they revealed "diffuse degenerative changes, bilateral facet disease, left greater than right, at L4-5 and L5-S1, and stenosis at L4-5".

[[Filing No. 14 at 5-8](#).]

But the ALJ also discussed Mr. Greathouse's MRI and x-ray in July 2010, which showed some stenosis, acknowledged Dr. Pryor's August 2010 diagnosis of degenerative disc disease with spinal stenosis, and noted that Dr. Pryor reported Mr. Greathouse's pain was somewhat improved although he still had difficulty with many functions and that Mr. Greathouse was somewhat better. [[Filing No. 12-2 at 30](#).] The ALJ went on to state that he could not disregard Dr. Pryor's statements, but that:

10

> I am assigning little weight to Dr. Pryor's opinion because he relied quite heavily on the subjective report of symptoms and limitations provided by the claimant. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Furthermore, it is not well supported by medically acceptable clinical findings and laboratory diagnostic techniques.

[Filing No. 12-2 at 31.]

The ALJ then set forth additional medical evidence and testimony from Mr. Greathouse regarding his activities of daily living, which he found were contrary to Dr. Pryor's conclusion that Mr. Greathouse was disabled, including that:

- Mr. Greathouse reported to Dr. James Hafer at the end of December 2010 that he was doing very well, was back to doing most of his activities without any chest pain or cardiac symptoms, had a good energy level, had no orthopnea, lower extremity edema, or shortness of breath, and had joined a gym and was planning to lose weight and do aerobic and weight resistant activities;

- In June 2011, Mr. Greathouse reported to Betty Logan, R.N. that he was doing well, had infrequent episodes of chest pain, but did not require treatment and had no shortness of breath; and

- Mr. Greathouse exercised at the YMCA five times a week, lifted weights for two hours, and rode a bike for 5-6 miles, spent three hours at the gym, swam, biked, and lifted weights, and used a hot tub/sweat room after his workout to relieve back pain.

[Filing No. 12-2 at 31-33.]

The ALJ diligently examined and weighed all medical source opinions in Mr. Greathouse's case and did not improperly dismiss Dr. Pryor's opinion. Indeed, the ALJ does not explicitly disagree with any of Dr. Pryor's medical findings, and Mr. Greathouse does not point out any inconsistencies between Dr. Pryor's opinion and the ALJ's opinion, other than the ultimate conclusion regarding whether Mr. Greathouse is disabled.

Additionally, the ALJ's failure to specifically address every factor set forth in 20 C.F.R. § 440.1527(c) – as Mr. Greathouse argues the ALJ was obligated to do – does not require remand,

because the ALJ clearly set forth the reasons why he was giving limited weight to Dr. Pryor's opinion, including that his opinion that Mr. Greathouse was disabled and unable to work conflicted with other medical evidence and with Mr. Greathouse's own testimony. The Seventh Circuit has made clear that an ALJ need not explicitly weigh every relevant factor to conclude that a treating physician's opinion should be discounted, as long as the ALJ otherwise articulates why it is inconsistent with the record. *See Schreiber v. Colvin*, 519 Fed. Appx. 951, 959 (7th Cir. 2013) (rejecting claimant's argument that ALJ erred because he did not specifically address each factor set forth in 20 C.F.R. § 404.1527, and finding that "while the ALJ did not explicitly weigh each factor in discussing [the treating physician's] opinion, his decision makes clear that he was aware of and considered many of the factors, including [the physician's] treatment relationship with [the claimant], the consistency of her opinion with the record as a whole, and the supportability of her opinion….[O]ur inquiry is limited to whether the ALJ sufficiently accounted for the factors in 20 C.F.R. § 404.1527…and built an 'accurate and logical bridge' between the evidence and his conclusion. We find that deferential standard met here"); *Henke v. Astrue*, 498 Fed. Appx. 636, 640 n.3 (7th Cir. 2012) ("The ALJ did not explicitly weigh every factor [in 20 C.F.R. § 404.1527] while discussing her decision to reject [the treating physician's] reports, but she did note the lack of medical evidence supporting [the treating physician's] opinion…and its inconsistency with the rest of the record….This is enough"); *Clifford*, 227 F.3d at 870 (ALJ need only "minimally articulate his reasons for crediting or rejecting" a treating physician's opinion).

Dr. Pryor's statement that Mr. Greathouse was disabled and unable to work did not entitle him to benefits, *Id.* at 870, and the ALJ adequately explained why that statement conflicted with medical findings in the record as well as Mr. Greathouse's activities of daily living. *See*

12

*Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).  Remand is not appropriate based on this issue.

## IV.
### CONCLUSION

The standard for disability claims under the Social Security Act is stringent.  "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet v. Astrue*, 364 Fed.App'x 271, 274 (7th Cir. 2010).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.  *Id*.  Taken together, the Court can find no legal basis presented by Mr. Greathouse to overturn the Commissioner's decision.  Therefore, the decision below is **AFFIRMED**.  Final judgment will be entered accordingly.

Date: February 6, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**